IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Greenville County School District, | ) |
| Petitioner, | ) |
| | ) Civil Action No. 6:23-cv-05162-TMC |
| v. | ) |
| | ) **ORDER** |
| Maxine Brown-Sartor, *on behalf of* A.B., | ) |
| Respondent. | ) |

Plaintiff Greenville County School District ("GCSD") brought this action against Defendant Maxine Brown-Sartor, *on behalf of* A.B. ("Brown-Sartor"), pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(i)(2)(A), (3)(A). Because Brown-Sartor is proceeding *pro se*, this action was referred to a United States Magistrate Judge for the handling of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). Now before the court is the Report and Recommendation (the "Report") of the magistrate judge, (ECF No. 59), recommending the court grant GCSD's motion for judgment on the pleadings (ECF No. 48). Brown-Sartor filed objections to the Report, (ECF No. 61), and GCSD filed a reply (ECF No. 62). This matter is ripe for review, and a hearing is unnecessary for the court to issue a ruling. *See* Local Civ. Rule 7.08 (D.S.C.).

**The IDEA and Judicial Review of IDEA Decisions**

The IDEA requires states receiving federal funds for education to provide disabled schoolchildren with a "free appropriate public education," *i.e.*, "FAPE." 20 U.S.C. § 1412(a)(1)(A). "A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction.'" *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478,

483 (4th Cir. 2011) (quoting *Board of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982)).  The IDEA "does not require a perfect education," *Heffernan*, 642 F.3d at 483–84 (internal quotation marks omitted), but only a FAPE that is "reasonably calculated to confer some educational benefit on a disabled child." *MM ex rel. DM v. School Dist. of Greenville Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002).  To ensure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined to be learning disabled. *See* 20 U.S.C. § 1414(d)(1)(A); *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017) (explaining that after a child is identified and evaluated, the "primary vehicle for providing each child with the promised FAPE" is an "individualized education program" (internal quotation marks omitted)).  "[T]he IEP spells out a personalized plan to meet all of the child's 'educational needs." *Fry*, 580 U.S. at 158 (internal quotation marks omitted).  The IEP is developed by an "IEP team, consisting of the child's parents, school officials, and teachers" who consider "the strengths of the child; any concerns of the parents; the results of the child's evaluations; the academic, developmental, and functional needs of the child." *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 198 (4th Cir. 2024).

"The IDEA also establishes procedures for resolving disputes between parents and schools about a child's special education." *Id*. at 199.  "Dissatisfied parents may file a complaint with the appropriate local or state educational agency and attempt to resolve their differences through informal meetings, a mediation process, and ultimately a formal due process hearing." *Id*. (citing 20 U.S.C. § 1415(b)(6), (e), (f)(1)(A), (f)(1)(B)(i)).  In South Carolina, this involves a two-tiered administrative process whereby "a hearing first is conducted before an LHO [Local Hearing Officer] and then is appealable to an SRO [State Review Officer]." *Lexington Cnty. Sch. Dist. One v. Frazier ex rel. D.T.*, No. 3:10-01808-MBS, 2011 WL 4435690, at *7 (D.S.C. Sept. 22, 2011).  Once state procedures have been exhausted, "any party aggrieved by the hearing officer's

2

determination [may] file suit in federal court." *G.M. by E.P. v. Barnes*, 114 F.4th 323, 330 (4th Cir. 2024) (citing 20 U.S.C. § 1415(i)(2)(A)).

When "considering a challenge to a state administrative decision in an IDEA case," a federal district court "makes an independent decision based on its view of the preponderance of the evidence." *Heffernan*, 642 F.3d at 484. This court "must give 'due weight' to the administrative proceedings, but the findings of fact and ultimate decision as to whether the state has complied with the IDEA are made by the district court." *Id*. (citing *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 103 (4th Cir.1991)). In turn, "[t]o afford 'due weight,' [the court] treat[s] the state hearing officer's factual findings and credibility determinations as '*prima facie* correct . . .,' so long as the findings were 'regularly made.'" *Barnes*, 114 F.4th at 334 (quoting *Doyle*, 953 F.2d at 105). The Fourth Circuit elaborated on when findings are "regularly made" as follows:

> Focusing on process, our Court has held that findings are regularly made if the hearing officer "conducted a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." [*J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty.*, 516 F.3d 254, 259 (4th Cir. 2008)]. If the hearing officer employs a process that is not "far from the accepted norm of a fact-finding process," *id*. (internal quotation marks omitted), we can rely on her findings when making our independent decision based on a "preponderance of the evidence," 20 U.S.C. § 1415(i)(2)(C)(iii).

*Id*. at 334. If, however, the court "depart[s] from the hearing officer's findings, [it] must 'explain why.'" *Id*. (quoting Doyle, 953 F.2d at 105). In making this assessment, the court must be mindful that "the party seeking relief under the IDEA bears the burden of proof by a preponderance of the evidence." *Id*.

**Factual and Procedural Summary**

At the time of the events in question, A.B. was a student in the Greenville County School District with a qualifying disability under the IDEA. (ECF No. 1 at 2). During the 2022 – 2023

3

school year, GCSD proposed extended school year ("ESY") instruction for the summer of 2023, consisting of one-on-one instruction four days per week, two hours per day, using "techniques and materials that incorporated the use of visualization . . . and customized math lessons also utilizing Achieve 3000, a differentiated, research-based math program during ESY instruction and pre-teaching geometry-related concepts and vocabulary." *Id*. at 3. Brown-Sartor, A.B.'s parent, advocated instead that the ESY instruction use the Lindamood-Bell program and the "Math U See curriculum" five days per week, four hours per day—for a total of 80 hours of instruction. *Id*.

Brown-Sartor demanded a due process hearing to challenge GCSD's proposed plan for ESY services on two grounds. First, Brown-Sartor contended that the proposed plan failed to provide a sufficient amount of instructional service hours for ESY. Second, Brown-Sartor challenged the methodology proposed, *i.e.*, the educational programs proposed by GCSD. As noted by the magistrate judge, however, both the LHO and SRO determined that the methodology used was appropriate and reasonably calculated to enable A.B. to make appropriate progress in light of the circumstances. GCSD does not challenge the determination with respect to methodology. Accordingly, this action involves only the issue of the sufficiency of amount of instructional ESY services proposed by GCSD.

After a two-day hearing during which both sides were permitted to present testimony and submit evidence, (ECF Nos. 36-1, 36-2, 36-3, 36-4), the LHO issued a decision finding that the GCSD's plan for ESY services for the summer of 2023 was "reasonably calculated to enable [A.B.] to make progress that is appropriate considering her circumstances." (ECF No. 36-5). With respect to the number of hours per day, the LHO noted that GCSD's witnesses—"instructors with hands-on experience with [AB]"—"contend that four hours of daily instruction is far too intense for [AB]" and "explained how tired [AB] was after a typical school day" and that a "regular

4

education class" does not impose the same level of stress as "one-to-one instruction" of the kind AB would be provided by GCSD's ESY plan. *Id*. at 11–12. Additionally, the LHO noted that AB had "received four hours of daily instruction [in the summer of 2022], and [her] Lexile scores plummeted." *Id*. at 12. The LHO observed that in developing the ESY services plan for summer of 2023, GCSD considered Brown-Sartor's input as well as that of instructors who had personally worked with AB and had significant experience teaching students with challenges similar to AB's challenges. The LHO found, therefore, that GCSD did not propose two hours of ESY services per day or unilaterally limit the number of hours per day "for any reason other than [A.B.'s] needs." *Id*. at 12–13.

As for GCSD's provision of ESY services for four days per week instead of Brown-Sartor's request for five days per week, the LHO rejected Brown-Sartor's contention that GCSD's decision was based on mere convenience because the school district was closed on Fridays in the summer. The LHO noted that there was no testimony to support this assertion and, in fact, that "[t]he secondary special education director denied that this reason was given during the IEP meetings she attended." *Id*. at 13. Accordingly, as with the number of hours per day, the LHO found that GCSD did not unilaterally limit the number of days per week ESY services would be provided for any reason other than A.B.'s unique needs. *Id*. at 14.

Brown-Sartor administratively appealed the LHO's decision to the South Carolina State Department of Education. The SRO reached a different conclusion than the LHO, finding that ESY services should have been provided for four hours per day, five days per week. (ECF No. 36-9 at 17). The SRO determined that GCSD failed to provide a "cogent" explanation of its decision to provide ESY services for two hours per day, four days per week. *Id*. at 15–16. The SRO observed that "the two hours per day is a halving of the previous year's unsuccessful ESY

5

program rather than maintaining or increasing its level of services with reasonably calculated improvements in the methods and/or with more breaks and incentives." *Id*. at 16. The SRO stated that GCSD "relied on 'mental fatigue and reduced focus' as the reason [for reducing hours per day] . . . [but] did not provide any comparison to the previous ESY program for this factor, relying instead on its corresponding role during the school year." *Id*. The SRO found there was no showing that it was not feasible to provide 4 hours of services per day using 30-minute blocks separated by 5 or 10-minute breaks. *Id*. at 2 n.5, 16. The SRO further observed that GCSD offered testimony indicating ESY instruction would be delivered one-on-one but found that such was no different than the unsuccessful 2022 ESY program which also included one-to-one instruction. *Id*. at 16. Finally, as for the numbers of days per week, the SRO found that GCSD was providing ESY services for four, rather than five, days per week based on its own convenience rather than AB's needs. *Id*. at 17. The purported basis for this finding was that the LHO "missed [Brown-Sartor's] credible testimony, as an employee for [GCSD], that the building housing the ESY program was closed on Fridays" and "[w]eighed against this missed fact, the [GCSD's] avowed consideration and flexibility for scheduling ESY" was "questionable" and not cogent. *Id*. at 16–17. The SRO's remedy was that GCSD pay for 48 hours of compensatory education services, arrived at by starting with Brown-Sartor's proposed total of 80 hours (4 hours x 5 days per week x 4 weeks) and subtracting the 32 total hours actually provided (2 hours x 4 days per week x 4 weeks). *Id*. at 18. Additionally, the SRO ordered that "[t]he Parent may choose the instructor(s) and the time for these compensatory services just as long as they are: (1) completed within one year of the final decision in this case; (2) for the Student's identified needs in reading, math, and or writing; and (3) at a rate of less than $150 per hour.'" *Id.*

GCSD then brought this action for review of the SRO's decision to the extent that the SRO determined that "the amount of ESY instruction required for A.B." was insufficient and that GCSD must provide compensatory education hours." *Id*. at 5; *see* 20 U.S.C. § 1415(i)(2)(A) (providing an aggrieved party, once administrative state procedures are exhausted, may file a civil suit in federal district court). GCSD seeks an order from this court concluding that GCSD designed and offered to Brown-Sartor an appropriate plan for ESY services for A.B. during the summer of 2023. *Id*. at 6.

## Report

The Report recounts the procedural history of this case in detail, and the court need not restate it here, except to note that that Brown-Sartor filed a motion to dismiss (ECF No. 25), raising various procedural deficiencies and seeking to revisit the denial of her motion to consolidate this action with *Brown-Sartor et al v. Greenville County School District et al.*, No. 6:23-cv-05029-TMC. On February 18, 2025, the undersigned entered an order denying Brown-Sartor's motion to dismiss. (ECF No. 56).

Presently before the court is GCSD's motion for judgment on the administrative record ("AR"). (ECF No. 48).[1] The magistrate judge issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Brown-Sartor of GCSD's motion and the possible consequences if she failed to adequately respond thereto. (ECF No. 50). Brown-Sartor filed a response indicating that she has not consented to the magistrate judge's involvement in pre-trial matters in this case; that the "[e]ntire case is null and void" and not subject to or governed by the Federal Rules of Civil Procedure; that counsel for GCSD "continues to [embezzle] Tax Payer and

---

[1] In November 2024, GCSD filed the certified administrative record at docket entry number 36 (ECF No. 36) and served Brown-Sartor with a copy of the same (ECF Nos. 38, 38-1). For ease of reference, the court cites to the ECF number when referring to the AR.

IDEA funds for their own profit"; and that she will not continue to participate because the court is "deny[ing] citizens their constitutional right to impartial due process of the law." (ECF No. 52 at 1). GCSD then filed a reply attempting to address these assertions. (ECF No. 53).

In the Report, the magistrate judge correctly recognized that "when the LHO and SRO reach different conclusions, the district court should give due weight to the regularly made findings of both officers." (ECF No. 59 at 7); *see Heffernan*, 642 F.3d at 485. In reviewing the SRO's findings, however, the magistrate judge, concluded that to the extent the SRO "improperly disregarded the credibility-based factual findings of the LHO without explanation," *id*. at 9, such findings were not entitled to due weight, *id*. at 10. First, the magistrate judge addressed the SRO's findings regarding the number of hours per day ESY services would be provided:

> The SRO found that GCSD's ESY explanation was not "cogent" because the two-hour time blocks per day halved the four hours per day provided the year before (with ESY services for 2022 viewed as unsuccessful) with no explanation or difference in instruction based on testimony that 2022 ESY services were also one-on-one instruction (*id*. at 16). The SRO then found unpersuasive GCSD testimony that the ESY services were limited to two hours per day based on mental fatigue since the testimony was based on experience with A.B. during the school year (*id*. at 16). However, the SRO failed to provide appropriate deference to the LHO's determination and explanation that GCSD witnesses credibly testified that the decision to change to two hours of ESY services for A.B. per day was to avoid fatigue (*see* doc. 36-5 at 12 (citing docs. 36-1 at 196–97, 293–94; 36-2 at 112)). Moreover, as noted by the LHO, a former advocate for A.B. even testified that quality of instruction – instead of quantity – was important in formulating a plan for A.B. (docs. 36-2 at 112; 36-5 at 12). Indeed, although not referenced by the SRO, as noted by the LHO, A.B.'s former advocate testified that having too many hours of instruction time could result in diminishing returns from "stressing Student with too many hours" – and she specifically would not testify that four hours of ESY services per day were required for A.B. (docs. 36-2 at 112; 36-5 at 12). In light of the foregoing, the SRO's conclusion that A.B. required four hours of ESY services per day does not appear regularly made and is thus not entitled to due weight.

*Id*. at 10.

Second, as to the number of days per week of ESY instruction offered by GCSD, the magistrate judge likewise concluded the SRO's findings were not entitled to due weight:

> [T]he SRO found that the LHO improperly discounted Ms. Brown-Sartor's "credible testimony" that the four-day ESY schedule was based on GCSD facilities being closed on Fridays (*id*. at 16–17). However, the SRO appeared to ignore the LHO's conclusion that there was no evidence or testimony in the record to support Ms. Brown-Sartor's argument that the ESY services were limited to four days based on GCSD being closed on Fridays (doc. 36-5 at 13–14). Instead, as recognized by the LHO, there was testimony that five days of ESY services were considered and eventually changed to four days based on what GCSD employees felt A.B. could tolerate (*id*.). The SRO, as noted, found that Ms. Brown-Sartor provided credible testimony that the decision to limit A.B.'s ESY services to four days was based on GCSD being closed on Fridays; however, that testimony from Ms. Brown-Sartor was regarding 2022 ESY services, not 2023 ESY services (*see* doc. 36-1 at 138–139 (testimony that A.B. was provided "four days, four hours" ESY services during summer of 2022 because GCSD was closed on Fridays)).

*Id*. at 11.

The magistrate judge then conducted an independent review to determine the appropriateness of the amount of 2023 ESY services for A.B. based on a preponderance of the evidence. With respect to the number of hours per day of instruction for A.B., the magistrate judge determined a preponderance of the evidence supports a finding that GCSD appropriately determined that two hours of ESY services per day would provide A.B. with a FAPE. The Report provides a detailed summary of such evidence including the testimony of Jennifer Brutosky, "(an educational support teacher) [who] testified specifically that four hours of ESY instruction per day would be . . . too much for A.B. to bear secondary to 'mental exhaustion and fatigue'" and that "five or ten minute breaks in four hours of instruction would not relieve the mental exhaustion and fatigue so that the ESY instruction could be beneficial for A.B." (ECF 36-1 at 196–97); Lavern Johnson Canada, a case manager and special education teacher, "testified that she felt that two hours of instruction per day was appropriate for A.B. . . . that having a two-hour block of ESY services with a long break and then two more hours of ESY services would not be appropriate for A.B.," *see* (doc. 36-1 at 337–38), and that "two hours four days a week could get [A.B.] the skills that she need[ed] for the next school year . . . without overwhelming her," *id*. at 344; Rebecca

9

Barnes, an educational consultant and former advocate for A.B., "testified that 'quality' was more important than 'quantity' of instruction for A.B.," (ECF 36-2 at 112), and that "A.B. would do best with sixty to ninety-minute blocks of instruction at a time and that any break between instruction would need to be at least ninety minutes," *id*. at 127–28; 129–30; and Amy Mims, a special education specialist who reiterated that four hours per day would be too intensive for A.B, (ECF No. 36-2 at 160–61). The magistrate judge observed, finally, that there is no record evidence that two hours of ESY services per day would be insufficient for A.B except for Brown-Sartor's testimony and Dr. Gillespie's recommendation. *See* (ECF No. 59 at 13).

As for the number of days per week of ESY instruction for A.B., the magistrate judge noted "there is little to no record evidence that ESY instruction was limited to four days per week just for GCSD convenience" and that "the SRO relied on out of context testimony to determine that the four days of instruction were based on GCSD convenience." *Id*. at 13–14. The Report highlights the testimony of Ms. Mims, who indicated "the IEP team decided that eight hours per week would be appropriate for A.B. and then decided to offer those services over the course of four days" and "that GCSD being closed on Fridays did not affect planning for ESY services because she had 'served students on Saturdays when the need [was] there.'" *Id*. at 14; *see* (ECF No. 36-2 at 171–72). Accordingly, the magistrate judge found by a preponderance of the evidence that GCSD appropriately determined that four days of ESY services per week would provide A.B. with a FAPE.

In light of the foregoing, the Report recommends the court grant GCSD's motion for judgment on the AR (ECF No. 48).

**Review of the Report**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Additionally, since Brown-Sartor is proceeding *pro se*, this court is charged with construing her filings liberally in order to allow for the development of potentially meritorious arguments and claims. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a *pro se* litigant, [the court] must also be mindful of [its] responsibility to construe *pro se* filings liberally").

Accordingly, "when reviewing *pro se* objections to a magistrate's recommendation, district courts must review *de novo* any articulated grounds to which the litigant appears to take issue." *Elijah*, 66 F.4th at 460–61. This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court. *See Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure up questions never presented to them or to construct full-blown claims from sentence fragments'" (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985))).

## Discussion

The court has carefully reviewed Brown-Sartor's objections to the Report. (ECF No. 61). The court concludes these objections, even when liberally construed, completely fail to address the findings, conclusions and recommendations set forth in the Report currently before the court. Instead, Brown-Sartor continues to make the same arguments (ECF No. 33) rejected by the court in its order denying her motion to dismiss (ECF No. 56) in this case, and rejected in a separate but related case, *see Brown-Sartor v. Greenville Cnty. Sch. Dist.*, ("*Brown-Sartor 1*") Civ. C/A No. 6:23-cv-05029-TMC, at ECF No. 33 (declining to consolidate *Brown-Sartor 1* and the instant case); *id*. at ECF No. 19 (Brown-Sartor also likewise reasserts arguments unrelated to the instant Report and previously rejected by this court in an order denying Brown-Sartor's motion for a preliminary injunction and addressing parents' rights under the IDEA in *Brown-Sartor 1*.

Nonetheless, out of an abundance of caution for a *pro se* party, the court has conducted a *de novo* review of the Report, the record, and the applicable law. Upon such review, the court accepts the Report (ECF No. 59) and incorporates it herein by reference. Accordingly, the court

**GRANTS** GCSD's motion for judgment on the administrative record (ECF No. 48). The court, having accorded due weight to both the regularly made findings of the LHO and SRO, concludes, based on a preponderance of evidence, that GCSD provided A.B. with a FAPE with respect to the ESY services provided in the summer of 2023.[2]

    **IT IS SO ORDERED.**

                                                 /s/Timothy M. Cain
                                               United States District Judge

Anderson, South Carolina
September 10, 2025

**NOTICE OF RIGHT TO APPEAL**

    The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[2] As a result, the court need not address whether the remedy ordered by the SRO was appropriate. *See Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th at 199 (explaining a district court "may provide a substantive remedy only when it determines that a school has denied a FAPE." (quoting *Fry*, 580 U.S. at 168 n.7)).